## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOSEPH BARAN, on behalf of himself and all others similarly situated, | UNITED STATES DISTRICT COURT DISTRICT OF NEW JERSEY |
| Plaintiff, | CASE NO: 2:12-cv-6046-KSH-PS |
| v. | |
| CITY OF RAHWAY, | **FIRST AMENDED COMPLAINT** |
| Defendant | |

## <u>INTRODUCTION</u>

1.   This is a class action brought on behalf of a New Jersey class challenging the defendant's uniform policy of operating unlawful and uncertified red light camera monitoring systems in City of Rahway, at a time when the City of Rahway (hereinafter "Rahway") was legally ineligible to operate such systems due to its lack of certification and its failure to comply with the mandatory statutory requirements needed to operate such systems legally in New Jersey; as well as defendant's issuance of violation notices, and defendant's collection of fines, based on the operation of these red light camera monitoring systems during this period of statutory ineligibility.

2.   This action raises claims under unjust enrichment, constructive trust, 42 U.S.C. §1983 and the New Jersey Civil Rights Act, <u>N.J.S.A.</u> 10:6-1 <u>et seq.</u>

3.   This action also seeks injunctive and declaratory relief, including a declaratory judgment that defendant violated <u>N.J.S.A.</u> 39:4-8.14 in operating the red light camera systems at issue between February 24, 2011 and at least June 14, 2012.

1

## THE PARTIES

4.   Plaintiff Joseph Baran resides in Milford, New Jersey. Like all other class members, he was issued a violation notice by defendant during the class period based on defendant's operation of a red light camera system in Rahway and he paid an $85 fine to defendant based on that violation notice during the class period. Like all other class members, he was never incarcerated for this alleged traffic violation and had no opportunity for habeas review.

5.   Defendant Rahway is a municipality organized under the laws and constitution of the State of New Jersey.

## THE UNIFORM COURSE OF CONDUCT AND POLICY WHICH GIVES RISE TO THE CLASS CLAIMS

6.   A red light camera system is an integrated system utilizing a camera, or multiple cameras, and vehicle sensors which work in conjunction with a traffic control signal to produce images of vehicles disregarding a red signal or "running a red light."

7.   On January 13, 2008, the New Jersey Assembly Bill 4314 was signed into law as N.J.S.A. 39:4-8.14, establishing a five-year pilot program authorizing the installation and utilization of red light camera systems in New Jersey, and setting minimum statutory requirements for the lawful operation of such systems in New Jersey.

8.   Prior to January 13, 2008, New Jersey law prohibited municipalities from erecting red light camera systems or from passing ordinances authorizing such systems.

9.   N.J.S.A. 39:4-8 prohibits municipalities, inter alia, from establishing a red light camera system without the approval of the Commissioner of the New Jersey Department of Transportation (hereafter "NJ DOT"). Prior to January 13, 2008, the Commissioner of NJ DOT had never approved any red light camera system.

10. Thus, N.J.S.A. 39:4-8.14 represents the sole legal avenue in New Jersey for a municipality to install and operate a red light camera system.

11. Only those municipalities which meet the statutory requirements set forth in N.J.S.A. 39:4-8.14 may legally maintain a red light camera system in New Jersey and issue violation notices and collect fines based on such a system.

12. The two red light camera systems at issue in this action was installed by defendant at the intersections of 1) Route 1 and East Milton Avenue, and 2) Route 27 (St. Georges Avenue) and Maple Avenue sometime prior to February 24, 2011. On February 24, 2011, defendant began issuing red light camera violation notices, and collecting $85 fines, based on these systems, and continued to do so until at least June 19, 2012, when NJ DOT suspended Rahway's red light camera system for failure to comply with N.J.S.A. 39:4-8.14.

13. During the period between February 24, 2011 and at least June 14, 2012, defendant's red light camera systems in Rahway violated the mandatory statutory requirements of N.J.S.A. 39:4-8.14 in at least four ways.

14. First, Rahway did not submit the statutorily-mandated initial certification by the Rahway municipal engineer required by N.J.S.A. 39:4-8.14(a)(3) prior to beginning the operation of the Rahway red light camera systems. Indeed, defendant did not submit this mandatory certification until more than a year after defendant began operating the Rahway red light camera systems.

15. Under N.J.S.A. 39:4-8.14(a)(3), before a municipality may lawfully operate a red light camera system, the municipal engineer must submit a certification to the New Jersey Department of Transportation ("NJ DOT") certifying that the yellow light interval at the red light camera system meets minimum statutory requirements. See N.J.S.A. 39:4-8.14(a)(3), which

requires that in the initial application to NJ DOT to operate a red light camera system, the municipality must submit:

> **"(3) <u>A certification by the municipal engineer that</u> (a) the intersection or intersections in question have a minimum duration of the amber light at the traffic control signal of three seconds if at least 85 percent of the vehicular traffic approaching the signal is traveling at a speed of 25 miles per hour or less; and (b) for each five mile increase in the speed of vehicular traffic referred to in subparagraph (a) of this paragraph above 30 miles per hour this minimum duration of the amber light shall be increased by one-half second." (emphasis added)**

16. The language of <u>N.J.S.A</u>. 39:4-8.14(a)(3) vests no discretion with anyone to waive compliance with this mandatory statutory requirement or to retroactively cure a violation of this statute by submitting a certification a year after Rahway's operation of the red light camera systems began.

17. If a certification by the municipal engineer to NJ DOT is not provided, certifying that the intersection has a yellow light interval that lasts at least 3 seconds if 85% percent of the traffic actually approaching that signal is traveling at a speed of 25 miles per hour or less; and that if 85% of the traffic for the signal actually approaches the intersection at speeds greater than 30 miles per hour, the red light camera system is not in compliance with the mandatory requirements of <u>N.J.S.A</u>. 39:4-8.14(a)(3) and the system is what NJ DOT refers to as "uncertified."

18. Rahway <u>did not</u> submit the certification required by <u>N.J.S.A</u>. 39:4-8.14(a)(3) until <u>June 14, 2012</u>, more than a year <u>after</u> Rahway began issuing violation notices and collecting fines based on the Rahway red light camera systems on February 24, 2011.

19. Thus, <u>ab initio</u>, Rahway was operating unlawful and uncertified red light camera systems in Rahway---in violation of mandatory statutory requirements---between February 24,

2011 and at least June 14, 2012.

20. In addition, the state statute authorizing the use of red light cameras in participating municipalities mandates that, after a municipality installs its red light camera system, that system must be inspected by the municipal engineer <u>at least six months after installation</u> of the red light camera system, and every six months thereafter by the municipal engineer, and that the municipal <u>must</u> also submit a certification of each such inspection to NJ DOT <u>at least every six months</u>. See N.J.S.A. 39:4-8.14(e):

> **"A traffic control signal monitoring system <u>shall be inspected and certified at least once every six months by the municipal engineer from the date of its installation</u> for the duration of the five-year pilot program prescribed by P.L. 2007, c. 348 (C.39:4-8.12, et seq.)."**
> **(emphasis added)**

21. The language of N.J.S.A. 39:4-8.14(e) vests no discretion with anyone to waive compliance with this requirement, or to extend the six month period set by the mandatory language of the statute. Instead, the statute expressly uses  mandatory language--- **"shall be shall be inspected and certified at least once every six months by the municipal engineer from the date of its installation"**--- in setting forth this requirement of inspections every six months.

22. In or about 2009, NJ DOT sent a letter to Rahway conditionally approving Rahway into the red light camera program. That letter reiterated the mandatory requirements of inspections of Rahway's red light camera system every six months after installation by the municipal engineer, stating that to continue to remain legally authorized to operate a red light camera system:

> **"the municipal engineer must submit a certified inspection report for each location every six (6) months. Please forward that information to the address below. This information should be sent to NJDOT, RLR Program, P.O. Box 613, Trenton, NJ 08625-0613."**

23. Defendant Rahway began operating two red light camera systems on or about February 24, 2011.

24. The NJ DOT's approval of Rahway red light camera system application specifically stated that the failure of Rahway to submit the required inspection certifications **"will void NJDOT approval."**

25. Despite actual notice of the mandatory requirement that defendant's right to operate red light camera systems was contingent on Rahway conducting inspections of each such system every six months, and on Rahway submitting certifications from the municipal engineer of such inspections every six months, defendant did not comply with the mandatory statutory requirement of N.J.S.A. 39:4-8.14(e).

26. In fact, Rahway conducted no inspection of its red light camera system whatsoever between February 24, 2011 and June 14, 2012, a period of sixteen months; well beyond the six month minimum period which the statute mandates for inspections.

27. Nor did Rahway submit any certifications of such inspections by the municipal engineer between February 24, 2011 and June 14, 2012, in direct violation of the requirements of N.J.S.A. 39:4-8.14(e).

28. On June 14, 2012, four days before Rahway was suspended from the red light camera program by NJ DOT for failure to comply with N.J.S.A. 39:4-8.14---and sixteen months _after_ Rahway began operating its two red light camera systems---Rahway finally submitted its first certification of inspection to NJ DOT under N.J.S.A. 39:4-8.14(e).

29. The plain language of N.J.S.A. 39:4-8.14(e), however states that the system **"shall be inspected and certified at least once every six months by the municipal engineer from the date of its installation."** (emphasis added)

30. No provision of the statute grants any discretion to waive this mandatory statutory requirement or to extend the time period for compliance beyond the minimum mandatory period of every six months, starting with the date of installation.

31. Here, the Rahway red light camera systems were installed prior to February 2011 and defendant began operating these systems and issuing violation notices based on them on February 24, 2011.

32. Thus, under the plain, mandatory language of N.J.S.A. 39:4-8.14(e), the first mandatory inspection of the Rahway red light camera systems by the Rahway municipal engineer was required to take place on or before August 24, 2011 and the second mandatory inspection of the Rahway red light camera systems by the Rahway municipal engineer was required to take place on or before February 24, 2012.

33. Yet, the documents obtained by plaintiff under OPRA reveal there were no inspections whatsoever of the two Rahway red light camera systems by the Rahway municipal engineer until June 14, 2012.

34. Thus, it is beyond dispute that Rahway was in violation of the mandatory six month inspection and reporting requirements of N.J.S.A. 39:4-8.14(e) from at least February 24, 2011 until June 14, 2012.

35. Yet, during that period, defendant issued thousands of violation notice based on the Rahway red light camera systems and collected hundreds of thousands of dollars from motorists based on those notices.

36. In addition, prior to June 14, 2012, Rahway failed to perform any traffic study of the actual speed at which 85% of drivers actually approach the Rahway red light camera systems intersections. (hereafter "an 85% traffic study").

37. <u>N.J.S.A</u>. 39:4-8.14(a)(3) requires a town to conduct such an 85% traffic study, prior to the time the town begins operating a red light camera system.

38. The reason for this is that <u>N.J.S.A</u>. 39:4-8.14(a)(3) requires that a certain amount of "yellow light time" must be provided to motorists approaching a red light camera system. The statutorily-required amount of "yellow light time" mandated by <u>N.J.S.A</u>. 39:4-8.14(a)(3) is based, not on the posted speed limit, but rather on the speed at which 85% of drivers actually approach the intersection.

39. Thus, unless the town conducts a study to determine what speed 85% of drivers actually approach the proposed red light camera intersection, compliance with <u>N.J.S.A</u>. 39:4-8.14(a)(3) is impossible.

40. The 85% traffic study required by <u>N.J.S.A</u>. 39:4-8.14(a)(3) <u>was not</u> conducted by defendant for the Rahway red light camera systems until June 14, 2012, more than a year <u>after</u> defendant had already begun issuing violation notices and collecting fines based on the Rahway red light camera systems on February 24, 2011.

41. Defendant's failure to conduct such an 85% traffic study prior to June 14, 2012 made compliance with <u>N.J.S.A</u>. 39:4-8.14(a)(3) prior to that date impossible because the yellow light durations mandated by <u>N.J.S.A</u>. 39:4-8.14(a)(3) are all based on the speed at which 85% of drivers actually approach the intersection with a red light camera system.

42. NJ DOT expressly informed Rahway of its statutory duty under the statute to conduct such an 85% traffic study, stating in a letter to Rahway:

> **"To assure full compliance with this statute NJDOT requires Rahway to conduct a speed study along every RLR camera-operated approach to every authorized RLR traffic signal within the Township."**

43. Rather than conducting such an 85% speed study prior to the time defendant began

operating the Rahway red light camera systems on February 24, 2011, defendant decided to base the yellow light duration of the Rahway red light camera systems on the posted speed limits at the intersections where these systems were located.

44. This fact is admitted in the documents produced by NJ DOT in response to plaintiff's OPRA requests.

45. N.J.S.A. 39:4-8.14(a)(3), however, specifically rejects a standard based on the posted speed limit for determining the length of the yellow light phase at a red light camera system.

46. Instead N.J.S.A. 39:4-8.14(a)(3) requires the municipality to base the timing of the yellow light duration on the actual speed at which 85% of drivers approach the intersection, not the posted speed limit.

47. In explaining the minimum yellow light interval requirements of N.J.S.A. 39:4-8.14(a)(3), the NJ DOT has issued a set of written guidelines, contained in the "NJDOT Design annual— Roadway Traffic Signal Design" which states at 12-6:

> **"The NJDOT rule for calculating the yellow change interval is:**
> **One second for every 10 miles per hour (minimum of 3 seconds).**
> **For speeds above 30 mph, the yellow time must be rounded upward.**
>
> **EXAMPLES:**       **35MPH=4 seconds yellow**
> **45MPH= 5 seconds yellow**
> **55MPH= 6 seconds yellow"**

48. The yellow light interval on Rahway's red light camera systems are not based on the speed at which 85% of drivers actually approach these intersections, however.

49. Instead, they are based on the posted speed limit at these intersections, which is not the standard set forth in N.J.S.A. 39:4-8.14(a)(3).

50. The actual speed at which 85% of drivers pass through the intersections where

Rahway's red light camera systems are located is higher than the posted speed limit and N.J.S.A. 39:4-8.14(a)(3) requires that the yellow light interval for these systems be timed based on that speed rather than the posted limit.

51. Using the correct measure under N.J.S.A. 39:4-8.14(a)(3), the yellow light interval of Rahway's red light camera systems would need to be at least .5 seconds longer than they currently are and thus the yellow light intervals on these systems violate N.J.S.A. 39:4-8.14(a)(3).

52. The failure to provide motorists with the statutorily mandated period of yellow light time required by N.J.S.A. 39:4-8.14(a)(3) is not a harmless or technical violation.

53. Putting aside the fact that these yellow light intervals are statutorily mandated for every red light camera system, the lack of sufficient yellow light time gives motorists traveling through the intersection insufficient time to stop safely and forces motorists faced with a yellow light to choose between slamming on the brakes and perhaps causing an accident or going through the light and getting a red light camera system violation notice from defendant (along with a demand for $85).

54. Thus, there is no question that, ab initio, defendant's operation of two uncertified red light camera systems in Rahway---and their issuance of violation notices and collection of fines based on such an uncertified system---between February 24, 2011 and at least June 14, 2012 violated N.J.S.A. 39:4-8.14(a)(3) and (e) in several respects.

55. During that time, defendant had actual notice of the fact that Rahway's red light camera systems did not meet statutory requirements.

56. Despite this, defendant continued to collect and did collect hundreds of thousands of dollars in fines based on that system between February 24, 2011 and June 14, 2012.

57. On June 19, 2012, NJ DOT suspended 19 New Jersey townships with "uncertified" red light camera systems---including Rahway --- for failure to conduct the 85% traffic study and for failure to submit the certification to NJ DOT required by N.J.S.A. 39:4-8.14(a)(3).

58. Thus, even NJ DOT formally recognized that Rahway' failure to conduct the 85% traffic study and its failure to submit the certification required by N.J.S.A. 39:4-8.14(a)(3) rendered Rahway's red light camera systems uncertified and not compliant with the statute.

59. Despite this, defendant has not refunded the $85 fines it collected from thousands of persons who were issued red light camera violation notices by defendant based on the Rahway red light camera systems during this period of non-compliance with N.J.S.A. 39:4-8.14(a)(3) and (e).

60. Instead, Rahway has attempted to cure its violation of N.J.S.A. 39:4-8.14(a)(3) by having the Rahway municipal engineer submit a certification to NJ DOT for the first time on June 14, 2012, averring that the intersection with the red light camera system in that municipality has a yellow light interval that lasts at least 3 seconds **if** 85% percent of the traffic actually approaching that signal is traveling at a speed of 25 miles per hour or less; and that **if** 85% of the traffic for the signal actually approaches the intersection at speeds greater than 30 miles per hour, the yellow light period is at least one-half second longer for each five miles an hour over 30 miles per hour.

61. As outlined herein, that certification is incorrect and the Rahway system does not, in fact, provide the yellow light time required by N.J.S.A. 39:4-8.14(a)(3).

62. In addition to being incorrect, however, this statutorily-mandated certification was not submitted until more than a year after defendant began operating the Rahway red light camera systems on February 24, 2011 and issuing violation notices and collecting fines based on those

non-compliant and unlawful systems.

63. <u>N.J.S.A.</u> 39:4-8.14(a)(3) plainly requires this certification to be submitted to NJ DOT <u>before---not after</u>---the municipality begins to operate a red light camera system and no provision of the statute allows anyone to waive or retroactively cure a violation of <u>N.J.S.A.</u> 39:4-8.14(a)(3) by submitting the mandatory certification of compliance a year after the red light camera systems began operating.

64. Rather, the plain language of <u>N.J.S.A.</u> 39:4-8.14(a)(3) requires this certification by the municipal engineer to be submitted prior to the time the red light camera system begins operation, as part of the application process to lawfully operate a red light camera system.

65. Thus, the submission of a <u>N.J.S.A.</u> 39:4-8.14(a)(3) certification by the municipal engineer to NJ DOT on June 14, 2012, <u>does not</u> alter the fact that defendant was in violation of the statute and not legally entitled to operate an uncertified red light camera system in Rahway between February 24, 2011 and at least June 14, 2012.

66. Nor can defendant retroactively cure its failure to comply with <u>N.J.S.A.</u> 39:4-8.14(e).

67. <u>N.J.S.A.</u> 39:4-8.14(e) very clearly states that to be legally eligible to operate a red light camera system in New Jersey, the municipal engineer must <u>inspect</u> the town's red light camera system six months after it is first installed and every six months thereafter; and that the municipal engineer must submit a certification to NJ DOT as to the results of those inspections every six months.

68. No provision of the statute vests any person or entity with discretion to waive these mandatory eligibility requirements or to extend the six month time periods spelled out in <u>N.J.S.A.</u> 39:4-8.14(e).

69. Nor does any provision of the statute authorize a municipality to retroactively cure a

violation of N.J.S.A. 39:4-8.14(e) by conducting an inspection beyond the mandatory six month period after installation, as spelled out in the statute.

70. Thus, regardless of whether defendant's red light camera systems are currently in compliance with the statute, the simple fact is that Rahway's system did not meet the minimum statutory requirements of N.J.S.A. 39:4-8.14(a)(3) or N.J.S.A. 39:4-8.14(a)(3)(e) between February 24, 2011 and at least June 14, 2012.

71. In short, whatever defendant did on or after the June 14, 2012 can only affect its right to operate a red light camera system in Rahway in the future.

72. Unless defendant uses a time machine, defendant cannot now change the fact that it was operating two uncertified systems between February 24, 2011 and June 14, 2012 and that it was legally ineligible under New Jersey state law to run a red light camera system in Rahway during that time, or to issue violation notices and collect fines based on such non-compliant systems during that period.

73. Defendant must therefore refund the fines it collected in the past during that period when Rahway's red light camera systems were being operated in violation of N.J.S.A. 39:4-8.14(a)(3) and N.J.S.A. 39:4-8.14(a)(3)(e), because defendant was not statutorily eligible to impose them.

## CLASS ACTION ALLEGATIONS

74. Plaintiff brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a class defined as:

> **All persons who paid a fine to Defendant for a violation of N.J.S.A. 39:4:81, Failure to Observe Signal, where the violation notice was issued between February 24, 2011 and June 14, 2012, and was based on the red light camera systems maintained by Defendant in Rahway.**

75. Plaintiff also brings this action as a class action pursuant to Fed.R.Civ.P. 23, on behalf of a sub-class defined as:

> **All persons who paid a $85 fine to Defendant for a violation of N.J.S.A. 39:4:81, Failure to Observe Signal, where the violation notice was issued between February 24, 2011 and June 14, 2012, and was based on the red light camera system maintained by Defendant at the intersection of Route 27 (St. Georges Avenue) and Maple Avenue.**

76. The class and sub-class for whose benefit this action is brought are each so numerous that joinder of all members is impracticable.

77. The exact number and identities of the persons who fit within the proposed class are contained in defendant's records and can be easily ascertained from those records.

78. Based upon newspaper reports, the number in each exceeds 5,000 persons.

79. The claims in this action arise exclusively from the uniform conduct and municipal policy as alleged herein.

80. No violations alleged are a result of any oral communications or individualized interaction between any class member and defendant.

81. There are common questions of law and fact affecting the rights of the class members, including, inter alia, the following:

  a.   Whether, prior to operating the Rahway red light camera systems, defendant conducted the mandatory traffic study required by N.J.S.A. 39:4-8.14(a)(3) to determine the speed at which 85% of drivers actually approached the subject intersections;

  b.   Whether, prior to operating the Rahway red light camera systems, Rahway's municipal engineer submitted the certification required by N.J.S.A. 39:4-8.14(a)(3) to NJ DOT, which was needed to lawfully operate such systems in New Jersey;

c.   Whether defendant complied with the requirements of N.J.S.A. 39:4-8.14(e) by having the municipal engineer conduct an inspection of its red light camera systems six months after installation and every six months thereafter, and by having the municipal engineer submit a certification for each such inspection to NJ DOT every six months during the class period, all as required by N.J.S.A. 39:4-8.14(e);

d.   Whether defendant's failure to comply with the mandatory six month inspection and certification requirements of N.J.S.A. 39:4-8.14 (e) between February 24, 2011 and June 14, 2012 rendered defendant ineligible to maintain red light camera systems in Rahway during that period of non-compliance;

e.   Whether defendant's failure to comply with N.J.S.A. 39:4-8.14(a)(3) rendered Rahway, *ab initio*, ineligible to legally maintain red light camera systems in Rahway between February 24, 2011 and at least June 14, 2012;

f.   Whether the timing of the yellow light intervals at the Rahway red light camera systems met the statutory requirements of N.J.S.A. 39:4-8.14(a)(3) between February 24, 2011 and June 14, 2012;

g.   Whether defendant's failure to comply with the certification requirements of N.J.S.A. 39:4-8.14(e) and (a)(3) for a given period of time in the past can be retroactively cured by conducting an inspection and submitting a certification outside the time period mandated by N.J.S.A. 39:4-8.14(e) and (a)(3);

h.   Whether the class is entitled to a declaratory judgment that Rahway violated N.J.S.A. 39:4-8.14(a)(3) and (e) and was therefore not legally entitled to operate a red light camera system during that period of non-compliance.

82. Plaintiff is a member of the class he seeks to represent.

83. On or about May 15, 2012, Plaintiff was issued a N.J.S.A. 39:4-81 violation notice by defendant, based on its red light camera system located at the intersection of Route 27 (St. George's Avenue) and Maple Avenue, and Plaintiff paid a $85 fine to defendant based on that violation notice.

84. Plaintiff never appeared before a judge regarding the N.J.S.A. 39:4-81 violation notice. Plaintiff never made any allocution of facts on the record before a judge. No judge ever addressed his guilt on the record or made any determination as to the facts establishing such guilt, or that any alleged "plea" to this traffic offense entered by plaintiff was knowing, voluntary and intelligent.

85. The claims of plaintiff are not only typical of all class members, they are identical in that they arise from the uniform conduct by defendant and the same municipal policy and statutory authority as all other class members, and plaintiff's claims are based on the same legal theories of all class members.

86. Plaintiff has no interest antagonistic to, or in conflict with, the class.

87. Plaintiff will thoroughly and adequately protect the interests of the class, having retained qualified and competent legal counsel to represent himself and the class.

88. Defendant has acted and refused to act on grounds generally applicable to the class, thereby making appropriate injunctive and declaratory relief for the class as a whole.

89. The prosecution of separate actions by individual class members would create a risk of inconsistent or varying adjudications.

90. A class action is superior to other available methods for the fair and efficient adjudication of the controversy since, inter alia, the damages suffered by each class member

were less than $100 per person and individual actions to recoup such an amount are not economically feasible.

91. Common questions will predominate, and there will be no unusual manageability issues.

## COUNT ONE

### 42 U.S.C. § 1983

92. Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

93. The conduct by defendant described herein deprived plaintiff and the class of rights, privileges and immunities secured by the Constitution of the United States, including the Due Process clause of the Fourteenth Amendment of the United State Constitution and the Fourth Amendment of the United States Constitution.

94. The sole purported "probable cause" to issue any violation notices to plaintiff and the class came from defendant's operation of red light camera systems which defendant was prohibited by law from operating during the time in question.

95. The issuance of these violation notices without probable cause, based on what was, in fact, an illegal instrumentality, was unreasonable and constituted an unreasonable seizure and/or search in violation of the rights of plaintiff and the class under the Fourth Amendment.

96. The conduct conducted by defendant was carried out while defendant was acting under color of state law.

97. Defendant Rahway is a municipality and is a person within the meaning of Section 1983.

98. The challenged conduct of defendant was undertaken pursuant to an express policy of Rahway with regard to the issuance of tickets based on uncertified red light camera systems.

99. Under this policy, defendant continued to issue violation notices and to impose monetary fines for such alleged infractions, at a time when defendant was aware that it had failed to meet the mandatory statutory requirements to legally operate such a red light camera system in New Jersey and therefore defendant knew it was not legally eligible to operate such a system, or to issue violation notices based on such a system, or to collect fines for violation notices based on such a system during that period of non-compliance.

100. This policy was undertaken with deliberate indifference for the constitutional rights of plaintiff and the class.

101. Procedural due process imposes constraints on governmental decisions which deprive individuals of "liberty" or "property" interests within the meaning of the Due Process Clause of the Fourteenth Amendment.

102. Plaintiff was not sentenced to any incarceration as a result of the red light camera violation notice issued to him by defendant. Indeed, no individual who was issued a red light camera system violation notice by defendant in Rahway have been sentenced to any incarceration for the alleged red light camera system violation.

103. The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits.

104. Property interests are not created by the Constitution.

105. Rather, they are created, and their dimensions are defined, by existing rules or understandings that stem from an independent source such as state law rules that secure certain benefits and that support claims of entitlement to those benefits.

106.  In the case at bar, N.J.S.A. 39:4-8.14 is an independent source of certain benefits and property rights that support claims of entitled to those benefits and property rights.

107.  The Due Process Clause of the Fourteenth Amendment protects against governmental deprivations of life, liberty, or property without due process of law.

108.  The extraction of a monetary fine implicates the Due Process Clause of the Fourteenth Amendment to the United States Constitution even when only a small amount has been taken.

109.  At a minimum, plaintiff and the class have a property interest in the $85 monetary fines sought and assessed against them by defendant, which were based on defendant's operation of uncertified and unlawful red light camera systems during the class period.

110.  Accordingly, plaintiff and the class were entitled to the constitutional protections of procedural due process in this case and were deprived of that due process by the acts and omission alleged herein.

111.  The actions by defendant described herein amount to a deprivation of procedural due process.

## COUNT TWO

### UNJUST ENRICHMENT/DISGORGEMENT

112.  Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

113.  By the acts alleged herein, defendant received a benefit from plaintiff and the class in the form of $85 fines imposed on and collected from each class member in the manner alleged herein.

114.  The retention of that benefit by defendant would be unjust because the amounts were collected in a manner that violated the mandatory requirements of a New Jersey state statute, as outlined herein.

115.  By the facts alleged herein, equity demands that defendant disgorge itself of this benefit and that the benefit be returned to plaintiff and the class.

## COUNT THREE

### NEW JERSEY CIVIL RIGHTS ACT, N.J.S.A. 10:6-1 et seq.

116.  Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

117.  By the acts alleged herein, plaintiff and the class have been deprived of substantive due process or equal protection rights, privileges or immunities secured by the Constitution or laws of the United States, and/or substantive rights, privileges or immunities secured by the Constitution or laws of New Jersey, and have had their exercise and enjoyment of those substantive rights, privileges or immunities interfered with by a person acting under color of law.

## COUNT IV

### CONSTRUCTIVE TRUST

118.  Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

119.  A constructive trust under New Jersey law is not a conventional formal trust established with a named trustee, named beneficiary and a specific object.

120.  Rather, it is a court-imposed device, essentially remedial in purpose, to achieve equitable restitution where money or property identified as belonging in good conscience to the plaintiff could be traced to particular funds or property in the defendant's possession.

121.   Under New Jersey law, the formation of a constructive trust requires two elements: a "wrongful" act and that this act results in a transfer of property which was inequitable.

122.   The "wrongful" act needed to give rise to a constructive trust <u>does not</u> have to be fraud.

123.   Rather, such a "wrongful" act can consist of nothing more than a mere mistake or innocent misstatement.

124.   In the case at bar, defendant committed a "wrongful" act within the meaning of that term under New Jersey law.

125.   Specifically, defendant issued red light camera system violation notices in Rahway during a time when Rahway was in violation of the mandatory statutory requirements for operating a red light camera system lawfully in New Jersey and thus Rahway lacked the legal authority to issue such red light camera violation notices during that period of non-compliance.

126.   Defendant continued to issue violation notices and to impose monetary fines for such alleged infractions, at a time when defendant was aware that it had failed to meet the mandatory statutory requirements to legally operate such a red light camera system in New Jersey.

127.   Therefore, defendant knew it was not legally eligible to operate such a system, or to issue violation notices based on such a system, or to collect fines for violation notices based on such a system during that period of non-compliance.

128.   The violation of New Jersey state statute by defendant constitutes a "wrongful" act under New Jersey law.

129.   This "wrongful" act resulted in a transfer of property from plaintiff and the class to defendant.

130.  Based on the foregoing, the facts make out a viable claim for constructive trust under New Jersey law.

## COUNT V

## DECLARATORY JUDGMENT

131.  Plaintiff incorporates all preceding paragraphs as though fully set forth at length herein.

132.  Based on the conduct and facts alleged herein, plaintiff seeks a class-wide order for injunctive and declaratory relief, including a declaratory judgment that defendant failed to comply with the statutory requirements of N.J.S.A. 39:4-8.14 (a)(3) and (e) for lawfully maintaining a red light camera system in New Jersey between February 24, 2011 and at least June 14, 2012 and a declaratory judgment that, owing to these statutory violations, defendant was not lawfully entitled to operate a red light camera system in Rahway during that period of non-compliance.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks this court to:

a.  Certify the proposed class as a class action pursuant to Fed.R.Civ.P. 23;

b.  Enter an order for injunctive and declaratory relief as described herein;

c.  Enter judgment in favor of each class member for damages suffered as a result of the conduct alleged herein, to include interest and pre-judgment interest;

d.  Award plaintiff reasonable attorneys' fees and costs;

e.  Award plaintiff and the class actual damages;

f.  Grant such other and further legal and equitable relief as the court deems just and equitable.

## JURY DEMAND

Plaintiff hereby demands a trial by jury as to all issues so triable.

**SHABEL & DENITTIS, P.C.**

BY:   <u>  s/ Joseph A. Osefchen        </u>
        Stephen P. DeNittis (SD-0016)
        Joseph A. Osefchen (JO-5472)
        5 Greentree Centre
        525 Route 73 North, Suite 302
        Marlton, NJ 08053
        (856) 797-9951
        Attorneys for Plaintiffs

Dated:  October 17, 2012